3-17-0047 Ken Weller v. Workers' Compensation Commission Please report. Counsel, my name is Damon Young and I represent the petitioner, an appellant in this case, Ken Weller. This case consists of an individual who was injured on September 30, 2011, when he was driving a forklift truck backwards, injuring his neck. The arbitrator found the case compensable and found the neck injury related to the accident and awarded 232 weeks of TTD benefits. It was appealed to the commission. The commission still held that the neck condition was related to the accident but found the petitioner not credible, thus reversing the TTD award and went from 232 weeks of TTD down to a little over two weeks of TTD benefits. Just to go over some quick points, because I think they're essential in regards to the argument, is that the petitioner went to the emergency room the day after the accident and complained of the neck injury but was not given a work slip. He worked until the 4th of October and then on the 5th of October followed up with his general practitioner, Dr. Gross. Can I ask you a question, a threshold question? Yes, sir. When the claimant stopped working for the respondent as of October 4, 2011, did he have any medical authorization to do so? That's a good question and I think that is one issue. A lot of the questions are this morning, it seems like. I know. The commission pointed that out and on October 5, 2011, he was not given a work slip that day. Well, isn't that relevant, though? That he stopped working without authorization, isn't that relevant? It is and the petitioner followed up on October 12 and then again on the 19th with Dr. Gross and Dr. Gross gave him a document for disability and the doctor wrote him off work on that document from the 5th of October to the 19th of October. And then on the October visit, he was off from October 19, 2011 all the way through until Dr. O'Leary stated he could go back to work with restrictions. And I think that document that was the disability document is what the commission missed in that fact pattern because I don't think the question was, was he off work for at least from the 12th up to the time of arbitration. They used that to state that the petitioner was not credible and he testified that I was off work from the 5th, taking off work with my doctor from October 5, 2011 until the time of arbitration. When in fact, his testimony was credible with the record and I think the commission misread or did not see those documents and then misquoted or found that he was not credible. Just to clarify, Dr. Gross recounted that he did not authorize Clayman off work until October 12. We're not disputing that, right? Per medical visits, correct. But he did file and do a disability statement for the employer that took him back off work from the 5th on. Now, didn't Dr. Gross also, for whatever reason, express he had concerns about the Clayman's credibility, that he believed that the Clayman had been coached? Didn't the doctor say that? Right. Well, the doctor, okay. Seems unusual. No, it is. Yeah, absolutely, and what happened there was that we had medical follow-up visits from October 1 through the 12th in which he stated he had turned his neck and it popped. But then when he followed up a little bit later with Dr. Gross right around that period of time, he was saying he couldn't work because he was getting in and out of the fork truck and he was having pain with that. And I think with, I wasn't there at the deposition, but in the deposition, they were talking about it as if somehow him getting in and out of the fork truck is how he got hurt. But that's not how he was injured in the records, you know, state that. And I think that's where Dr. Gross was confused exactly why that was in his record compared to the accident and how it happened. And so that's why he said that maybe he was assuming in the debt, maybe he was coached or whatever, but the accident happened by him turning his neck. But then why is this decision against the manifest weight? When you've got the conflicting evidence that the claimant has offered light-duty work, he was physically capable of it, he could return to work as supported by Dr. Gross' initial slip. I mean, how do you carry the burden against the manifest weight? Okay, I think there's, I point out I think there's eight reasons why I think that it's against the manifest weight. One, he was never offered a light-duty position. The only time that there's supposed, okay, let me back up. Nobody for the respondent testified whatsoever. My client never testified he was given a light-duty work. What happened was that the commission looked at my exhibits that had light-duty or a work description in Dr. Gross' records, who never said that he could return back to that duty. They just took Dr. O'Leary's testimony that he thought he could do 25 pounds lifting, found a job description in my exhibits that Dr. Gross had, and said, see here, he could have worked that job, even though there was no testimony or no evidence that the respondent offered a light-duty work. Petitioner was off work by medical records from October 12, 2011, all the way until he saw Dr. O'Leary, who then went through his records and said that he thought he could return to work 25 pounds lifting restriction, but limited overhead work. Wasn't that within his job description? It was in, we don't know because the respondent never laid foundation for a job description saying what he could do. All that was found was in Dr. Gross' records a job description, and at the time Dr. Gross had that job description, Dr. Gross said he could not return to that work because he was off work. Exhibit 8 in my exhibits have two slips, an off work slip from October 12, and then another off work slip in, let me back up, an off work slip in October of 2011, another off work slip in March of 2012, and then also the deposition of Dr. Gross having him off work the entire time that he was seeing Dr. Gross. Let me ask you, the commission found the claimant could return to work as of October 19, 2011, was supported by Dr. Gross' initial slip authorizing claimant off work through that date, through that date, correct? Correct. Okay. Okay, but he was never returned to work on October 20th. He was off work the entire time, and that's all that the evidence is in. Was that his decision? He did not return to work. I'm sorry? Did the claimant want to return to work? Okay, I think you're hitting at the discussion where petitioner followed up with Dr. Gross on October 5th saying he could not go back to work, and part of that was because of the pain he was experiencing, and then Dr. Gross took him off work on the 12th up through the time of trial. So he was off work the entire time. The only off work opinions in this case, Dr. Gross, who had him off work, if you don't include the slip that he sent to the employer for saying he was off work from the 5th all the way to trial, if you just take the medical records themselves, was off work from October 12, 2011, all the way to the time of trial. Dr. Lieber, their IME, made no opinions in regards to his work status. Dr. O'Leary, when pressed in the deposition, said he could return to work, and when he returned to work, it would be under restrictions, and from that date in 2014, the respondent never offered any work whatsoever. He was never offered a job. He was terminated. He was never offered work after October 5th to the present, even though they had the off work slip from Dr. Gross, and when they sent Dr. Gross his work availability slip that took the petitioner off work from the 5th all the way to the present, when he filled it out on the 19th, no job offer was made. There's no job offer in the record. Nobody testified for the respondent. Another point the commission made was that Dr. O'Leary found it difficult to answer if a petitioner could work without restrictions. If you read the deposition, the only difficult thing that he had was that he couldn't, he didn't know what the job duties were for the fork truck driver. So he had a difficult time saying, well, I'm not sure what the fork driver did, but I can tell you right now, based on these restrictions, or on his medical condition, he needs, and then the work restrictions that we talked about previous. So there was no difficulty that he needed restrictions. It was, was it within some job that he was doing prior to the accident, that was the issue in the deposition. Another point. The claimant did not work after October 4th, 2011. Isn't the pertinent inquiry whether the claimant was capable of working after that date? Isn't that really the issue? Sure. And he couldn't, based on Dr. Gross' testimony and his deposition. Dr. Gross never said he couldn't go back to work, did he? After October 12th, 2011, yes, he said that the petitioner is off work. And then he said that, that's what he wrote October 12th, 2011. He also testified to that in 2012. And subsequent to that deposition, he wrote another off work slip, which is contained in Petitioner's Exhibit 8. But Dr. Leary was not in accord with Dr. Gross' opinion. Well, right. Two years later, petitioner sees Dr. O'Leary. Dr. O'Leary calls he connects the neck injury to the work accident, and he also gave petitioner work restrictions in 2014 at the time of trial. So that's the only two opinions that we have in the case in regards to his work status. At no time did a respondent then take Dr. O'Leary's opinion and say, hey, we have a job for you, here's the restrictions. No, but the commission found that he was physically capable of working light duty within the restrictions based on O'Leary's testimony, correct? Yes, the commission, well, they found two things. One, that he could return to work with Dr. O'Leary's restrictions, but they also found that he could have worked for the respondent based on an exhibit in Dr. Gross' records. But I still think that you can't just assume that. Do you have to support the commission's decision? Well, I mean, I think we can't assume that the respondent was offering that job within those restrictions because nobody said gave a job offer for him to return to work. I think you have to have two things, three things. One, you have to have, you're not off work, you have restrictions. Two, you can fill a job within the employer's employment. And three, you have to have the job offer. So you're honing in on the lack of a specific, you're saying the evidence doesn't establish a specific job offer? Well, two things. I think one is that the commission relied on facts that weren't specifically facts. And then two, yeah, I think if you go from Dr. Gross' off work opinion, the only opinion at that time, through 2014, the only next opinion towards work status was Dr. O'Leary's, who then put him on light duty restrictions. I think at that point, if you're going to say he's not entitled to TTD benefits, you have to have a job offer. And there wasn't one offered. And I don't think, as I have argued before, that you can just take an arbitrary document in somebody's records, pull it out and say, see, he could have filled this job, thus he's not entitled to TTD benefits. I think also, throughout these facts that I've been discussing, is that some of these facts they're saying are facts that aren't really facts, that they relied upon. And then some of the things I don't think it's fair to infer on a written deposition that Dr. O'Leary found it difficult to state he had restrictions or not. When we read the whole thing, that's not exactly what his testimony is. Also, what was, just to touch on one more time, is that the commission stated multiple times that the petitioner was not credible because he was not off work from October 5th through October 12th, and they relied on that as he is being inconsistent. Actually, though, the facts show that Dr. Gross took him off work from the 5th through the 12th in a separate document. The credibility of the document through the 5th through the 12th, I'm not arguing if he should have been off work or not. What I'm arguing is that if the petitioner relied upon that document, he's not being untruthful. He's actually understanding the facts better than how the commission summarized the facts because they were inaccurate in that situation. Also, on cross-examination, to back up, another issue with credibility was, as the petitioner stated, that he had an issue where he was telling people that he was turning his neck, and it popped, and then a couple weeks later in Dr. Gross' records, he had a situation where he said that he was getting in and out of the fork truck. Cross-examination, he's asked, why would you have these two accident histories? Explained, it's not two accident histories. One is, I turned my neck in the fork truck, I heard it. After I followed up after the accident, I returned back to work, and I was getting pain in my neck, getting on and off the fork truck. That's why he wanted off work. That was in cross-examination, in which he discussed that. I think after going through the eight items that the commission relied upon, and finding that some of them are just them reading into Dr. O'Leary's deposition, or they're just out and out, not accurate to the facts of the case, I think that their ruling was unsupported by the credible evidence, and thus it should be overturned, and the arbitrator's decision should be reinstated. Is there time for rebuttal? You'll have five minutes. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. Brad Elward on behalf of G&D Integrated. We're asking the court to affirm the finding on TTD, the decision to terminate TTD as of October 19, 2011. I think the question is, as the court has alluded to, is there evidence in the record to support what the commission did, specifically its unanimous rejection of the opinions of Dr. Gross and Dr. O'Leary as to the petitioner's ability to return to work? And I think there is ample evidence here for that conclusion. Before we get into that, and I think that's a seminal question, but he says, but aha, there was no specific job offer for him to return to. So how do you respond to that point? It's an interesting question, because there is no testimony offered by the petitioner in this case, or the employer in this case. There are no witnesses put on that point. The only thing that we have to rely on here is the finding that was in the medical record. I mean, that's what we've got. So the question is, is that sufficient? When the petitioner tells his physician that my employer wants me to come back to work at light duty. He did acknowledge that, didn't he? He did. He did. So the question is, is that significant enough evidence? Is it perfect evidence? No. I wouldn't argue with that. Certainly, we didn't bring somebody in to testify the job was available and produce a letter as you talked about in one of the prior cases. What we have here is a finding and a medical entry. That's what we've got. So based on what we have. How do we know the light duty job they wanted to come back to would fit within its restriction? Well, when we don't specifically from the standpoint of, there was no explanation, Your Honor, of what that light duty meant. But when we jump ahead and we look at what Dr. O'Leary said, who's the only doctor that really put restrictions on this gentleman as far as his ability to work, other than fully removing him from work, we look at Dr. O'Leary's opinions and we compare them to the job description that was offered. And the job description, it fits. Here's a petitioner who's able to work as an operator, which Dr. O'Leary said he could. The limitations were up to 25 pounds lifting, which Dr. O'Leary said he could. And if you notice at the bottom of that document, the commission, I think, seized upon this. There's a remark on the bottom of Exhibit 1 at C64. It says, quote, reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions, end quote. So when we match up the statement that my employer wants me to come back and do light duty work, with the fact that the light duty, if we accept Dr. O'Leary's restrictions, if we look at those restrictions and say, how do they compare to the only thing we have in the evidence in the case, which is the job description, they match. And so, I mean, I guess when I was looking at this case and I was saying, even if you jumped to page 3 of the commission's decision and go to the paragraph where it says the commission doesn't find credible Dr. Gross and Dr. O'Leary, and you say, well, I don't agree with that. I think Manifest White shows that that's wrong. What do we have? We've got Dr. O'Leary's opinion from three years after the accident where he says the petitioner can perform light duty work which fits within the job description that he had. So even in a worst case scenario, we have a description of the job functions that match the restrictions. And we have the petitioner's own testimony in the record to his doctor saying that they want me to come back and do light duty work. Now that's the extent of what we have. That's the record that we work with. What do we do with that language? Reasonable accommodations will be made for people with disabilities. Okay, obviously that's work done by the company lawyer, but that suggests that any restrictions will be accepted by your employer, your client. Well, that could suggest it, and that would be an inference that could be drawn. I think that's what's important here. In the case before you, they were asked to take an inference and use it against the commission's finding. In this case, an inference was made that the employer could accommodate, based upon the language in this job description, and without any hard evidence to oppose that, that's got to stand under a manifest wage standard. The other thing I want to point out... So even if the restrictions didn't match, arguably that language would suggest that they would accommodate within restrictions. It would suggest it. It would be a harder argument, but it would suggest it. But that's not the case here because you're saying the description, the restrictions by O'Leary fell within the job description. Exactly. And counsel makes a point of his Exhibit 8, which is the medical document that was from Dr. Gross. I think it was in October 3, 2012, where he says the petitioner has been off work and continues to be off work. And he says, well, why isn't that enough? That wasn't considered by the commission here. And he made that argument at the circuit court. But I would say this. There's two things to that. One, the commission found Dr. Gross' opinions on the inability to work to be not credible. So it really doesn't matter what that letter says because the commission chose not to rely on his opinions regarding the inability or ability to work. Second, the thing I think is very important is when we look at the testimony that Dr. Gross gave, he was asked specifically, you're a general practitioner. Yes, I am. Would you defer to the opinions of a specialist? He says, yes, I would. I've been trying to do that, in fact. And he names Dr. O'Leary by name. He says, I'd like to rely on what Dr. O'Leary is because he's a specialist. Well, then, when we get to Dr. O'Leary, what does he say? He says the petitioner can return to light-duty work, and he can work with up to 25 pounds lifting restrictions, which match the job description. So Gross refers to O'Leary by name? He does. I can't remember if it was in the deposition or in the medical records. But he says, I've been trying to do that. I've been trying to send him to Dr. O'Leary. Well, he got sent to Dr. O'Leary. And so if you're going to say the general practitioner is going to defer to the specialist, he's referring to him by name, and we have that doctor's opinions. And they just happen to match the job description. So we think there's ample evidence in this case to match up what the commission did here. Was this case perfect in how it was presented? No. Should we have brought in an employer testimony? Maybe. I don't know. But the document that's in the record is enough because it's the petitioner telling his physician, they want me to come back to work. They want me to do light-duty. Can I do it? And the court's correct in pointing out that there is a medical record that takes him off for about two weeks in October. But after that, we have no off work slip, no authorization for him to be off work on October 20th forward. Now, granted, there's that exhibit that we talked about, Exhibit 8, and I think we distinguished why that's not important here. But the evidence supports this decision. Again, this isn't something that this court has to agree with. You might have concluded just the opposite, that you'd have found it compensable and awarded the entire amount of TTD. What about Dr. Gross? You're saying we have nothing from that day forward. Didn't he have a medical leave of absence certification of health care provider? There was a form that he had submitted. But again, I would go back to the commission's express point where they're saying that Dr. Gross' opinions on the inability to return to work are not found to be credible for various reasons of inconsistency. And again, if we throw that out, then we've got Dr. Gross as a general physician deferring to a specialist by name, in this case, who offered opinions that the restrictions fit the job description. Now, he didn't say that, but what he said was that these are the restrictions, and when we look at the job description, they fit. And I think for that reason, that we have a situation here where the commission's decision is not against the manifest way of the evidence, and we ask you to affirm. Thank you. Let's touch on something, Your Honor. When I read the commission decision, I didn't think that they decided that Dr. Gross or Dr. O'Leary was not credible. What they found was is they felt the petitioner's complaints were not credible, thus they couldn't return to work. They actually found Dr. O'Leary and Dr. Gross credible, and relied on them for their causation opinion for the night. Did Gross indicate he would defer to O'Leary's opinion? I don't – this was several years before he even went to Dr. O'Leary. I don't think it said anything about Dr. O'Leary. He said that he tried to refer the petitioner to what's called INI, which is Illinois Neurological Institute, which is where a neurosurgeon was. Dr. O'Leary is at Midwest Ortho, so I don't think he said that in the deposition that he would defer to Dr. O'Leary. Did he ever say that? Dr. Gross? No. But if we back up again, is that what we have is Dr. Gross, who the commission found credible, taking the petitioner off work. And we keep getting into this job description in October of 2011 that Dr. Gross said he did not qualify for, and it was off work, to Dr. O'Leary in 2014 saying at that time he had work restrictions. I mean, that's something I think is very important. He never made opinions that the petitioner was on light duty or off work in October of 2011. He didn't make his opinions until 2014 going forward. And so based on that, we still don't have – we don't know if the employer could have accommodated in 2014, because we didn't have any testimony or any type of job offer at that time. This is the first time a medical doctor made an opinion that the petitioner was on light duty at any point at all. And so all we have is Dr. Gross's opinion. I've already argued about the inconsistencies, I think, in the commission decision in regards to my client's credibility, which I think in some instances were inaccurate or overstated. And then we have Dr. O'Leary's opinion to give him light duty in 2014. I think based on that, we have no evidence that the respondent could accommodate in 2014 with Dr. O'Leary's work restrictions. And all we have is Dr. Gross's off work opinions from October of 2011 until October – or until 2014 when you saw Dr. O'Leary. Thank you. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement of the disposition.